IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELIZABETH DEGROOT, | : | |
| ATTORNEY IN FACT FOR | : | CIVIL ACTION |
| ROGER DEGROOT, | : | |
| | : | No. 02-CV-3577 |
| Plaintiff, | : | The Honorable James K. Gardner |
| | : | |
| v. | : | |
| | : | |
| METROPOLITAN LIFE INSURANCE | : | |
| COMPANY and LUCENT | : | |
| TECHNOLOGIES INC., | : | |
| | : | |
| Defendants. | : | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants, Metropolitan Life Insurance Company ("MetLife") and Lucent

Technologies Inc. ("Lucent"), pursuant to Federal Rule of Civil Procedure 56, hereby move that

this Court grant summary judgment in their favor, because there are no genuine issues of

material fact and because they are entitled to summary judgment as a matter of law.  Support for

this Motion is set forth in: (1) the Affidavit of Daniel E. Wille and the Exhibits attached thereto;

(2) the Brief in support of this Motion; and (3) the Defendants' Amended Answer, all of which

have been filed with the court and are incorporated herein.

WHEREFORE, Defendants MetLife and Lucent respectfully move that this

Honorable Court grant summary judgment in their favor.

Dated February 10, 2003                    Respectfully submitted,


Daniel E. Wille (PA I.D. No. 39045)
Michael D. Jones (PA I.D. No. 65540)
Cher E. Wynkoop (PA I.D. No. 85482)
REED SMITH LLP
435 Sixth Avenue
Pittsburgh, PA 15219
(412) 288-3294/4584

Counsel to MetLife and Lucent

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on this date, a true and correct copy of the foregoing DEFENDANTS' MOTION FOR SUMMARY JUDGMENT upon the following counsel of record, by depositing the same in the United States mail, postage prepaid, addressed as follows:

Donald P. Russo, Esquire
P.O. Box 1890
Bethlehem, PA 18016-0890

_____

Date:  February 11, 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELIZABETH DEGROOT, | : | |
| ATTORNEY IN FACT FOR | : | CIVIL ACTION |
| ROGER DEGROOT, | : | |
| | : | No. 02-CV-3577 |
| Plaintiff, | : | The Honorable James K. Gardner |
| | : | |
| v. | : | |
| | : | |
| METROPOLITAN LIFE INSURANCE | : | |
| COMPANY and LUCENT | : | |
| TECHNOLOGIES INC., | : | |
| | : | |
| Defendants. | : | |

## <u>ORDER OF COURT</u>

AND NOW this ___ day of February 2003, Defendants Metropolitan Life Insurance

Company and Lucent Technologies Inc., having filed a motion for summary judgment, Plaintiff

having responded, and the court having given the matter full consideration, IT IS ORDERED

that the motion be, and the same hereby is, granted and summary judgment is hereby entered in

favor of Defendants.

_____

J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELIZABETH DEGROOT, | : | |
| ATTORNEY IN FACT FOR | : | CIVIL ACTION |
| ROGER DEGROOT, | : | |
| | : | No. 02-CV-3577 |
| Plaintiff, | : | The Honorable James K. Gardner |
| | : | |
| v. | : | |
| | : | |
| METROPOLITAN LIFE INSURANCE | : | |
| COMPANY and LUCENT | : | |
| TECHNOLOGIES INC., | : | |
| | : | |
| Defendants. | : | |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT[1]**

This is a straightforward case dealing with to the right to convert death benefit coverage under the terms of the Lucent Technologies Inc. ("Lucent") Group Term Supplemental Life Insurance Plan ("Plan"), an employee welfare benefit plan, as defined by Section 3(1) of the Employee Retirement Income Security Act of 1974, 26 U.S.C. §1001 et seq., as amended ("ERISA"), into an individual life insurance policy.

Metropolitan Life Insurance Company ("Metlife") and Lucent are entitled to summary judgment because Roger Degroot[2] failed to convert his group life insurance coverage under the terms of the Plan into individual life insurance coverage within 31 days of the date he attained age 65, in accordance with the Summary Plan Description of the Plan.  The Summary Plan Description was provided to him numerous times during his employment, after his retirement, and prior to his attainment of age 65.[3]

This case is particularly suited to disposition on motion for summary judgment because the present motion turns on legal questions and undisputed fact: (1) Whether ERISA

---

[1]  The information cited in the present brief is attached to the <u>Affidavit of Daniel E. Wille</u> respectively, as Exhibits A, B, C and D.  The <u>Affidavit of Edwin J. Adam</u> shall be referred to herein as "Exhibit A".  The deposition of Roger Degroot shall be referred to herein as "Exhibit B."  Various discovery materials provided to Plaintiff shall be referred to as "Exhibit C".

[2]  Plaintiff in this case is "Elizabeth Degroot, attorney in fact for Roger Degroot."  However, in this brief, Plaintiff will be referred to as Mr. Degroot or Degroot.

[3]  Exhibit C– Degroo 0207-0219, 0032-0173, and 0002-0031.

preempts state law and, in the alternative, (2) whether the provision of multiple summary plan descriptions to Mr. Degroot provided him with written notice of his conversion rights under the Plan, if ERISA does not preempt state law.

## I.  UNDISPUTED FACTS

Mr. Degroot became a participant in the Plan through his employment with Western Electric and AT&T, whose successor is Lucent.[4]  AT&T provided all of its active and retired employees with Summary Plan Descriptions ("SPD's") of the Plan periodically, in accordance with the requirements of ERISA.[5]  The SPD for the Plan which would have been in effect at Mr. Degroot's employment termination (retirement) was the January 1, 1987 SPD entitled, "AT&T Life Insurance Program for Active and Retired Employees."[6]

Mr. Degroot, along with all other eligible active and retired employees of AT&T, received a copy of such SPD by virtue of his active employee/participant status in 1987.[7] AT&T contracted with Universal Mailing Services ("UMS") to mail all such SPDs to supervisors of AT&T employees, who then distributed them to their respective active employees.[8]  The SPD explained, among other things, the details regarding the Plan's death benefits: basic life insurance and supplemental life insurance.[9]  Basic life insurance was automatically provided to all eligible employees and retirees at no cost at one times their base salary.[10]  Supplemental life insurance was provided under the Plan if elected by the employee/retiree at an employee/retiree-elected multiple of base salary, and paid for by the employee/retiree at group rates.[11]

One of the new features of the Plan that the 1987 SPD described was the ability of Plan participants to elect supplemental life insurance coverage of up to <u>four</u> times their base salary.[12]  Previous to 1987, employees were limited to electing the Plan's supplemental coverage

---

[4]    Exhibit B– pp 32-33.
[5]    Exhibit C – Degroo 0207-0219, 0032-0173, and 0002-0031.
[6]    Exhibit C – Degroo 0001-0031.
[7]    Exhibit C – Degroo 0002.
[8]    Exhibit A, para 3.
[9]    Exhibit C – Degroo 0001-0031.
[10]    Exhibit C – Degroo 0007.
[11]    Exhibit C – Degroo 0008.
[12]    Exhibit C – Degroo 0004.

only up to twice their base salary (again, paid for by the employee).[13]  The 1987 SPD explained

that if employees wished to increase their supplemental life insurance coverage to three or four

times their current coverage, they would be required to complete a new enrollment form to do

so.[14]

       Mr. Degroot, in accordance with the SPD's instructions, signed such an

enrollment form on October 28, 1986, on which he indicated that he had read and understood the

enrollment brochure for the "AT&T Supplemental Life Insurance Plan" (a prior name of the

Plan), which became effective January 1, 1987, and that he elected to increase his coverage

under the Plan (from twice his base salary), to the maximum of four times his base salary (i.e.

$52,000 X 4 = $208,000).[15]

       The 1987 SPD also explained that employees who were retiring had the option of

continuing their death benefit coverage until they attained age 65 (at which time their coverage

under the Plan would terminate), and then, under the terms of the Plan, they could elect to

convert to an individual life insurance policy.[16]  Mr. Degroot has confirmed that Lucent provided

this information about the Plan to him while he was an employee.[17]

       Mr. Degroot voluntarily retired from AT&T, effective December 31, 1989, under

the AT&T Management Pension Plan Special Retirement Option.  Mr. Degroot completed a

form to indicate his intent to retire, on which he certified that he had read the information

package describing entitlements under the Special Retirement Option.[18]  Mr. Degroot confirmed

that he received information about the early retirement option from AT&T.[19]

       As explained in the 1987 SPD, upon his retirement from AT&T on December 31,

1989, Mr. Degroot's basic life insurance coverage continued automatically after his retirement,

at no cost to him.[20]  Additionally, Mr. Degroot elected to continue his supplemental death benefit

---

[13]   Exhibit C – Degroo 0222.
[14]   Exhibit C - Degroo 0006.
[15]   Exhibit C – Degroo 0222, Exhibit B pp 40-42.
[16]   Exhibit C – Degroo 0212, 0214, 0147, 0151, 0012-0014.
[17]   Exhibit B – pp 36, 67.
[18]   Exhibit C – Degroo 0266.
[19]   Exhibit B – pp 62-63.
[20]   Exhibit C – Degroo 0007.

coverage under the Plan after retirement, and in accordance with the provisions described in the 1987 SPD.[21]

On December 19, 1989, Mr. Degroot completed the form entitled "AT&T Insurance Deduction & Coverage Continuation for new Pension Payroll Enrollments" and submitted it for processing.[22]  On this form, Mr. Degroot elected retiree supplemental life insurance coverage or death benefit of 4 times his basic coverage of $52,000, for a total of $208,000 of coverage, by payroll deduction from his pension check, beginning January 1, 1990.[23]  Mr. Degroot has confirmed that he received his pension payment through direct deposit. Mr. Degroot also confirmed that he received a monthly pension "stub" in the mail from AT&T/Lucent which described all automatic deductions, including the cost of the Plan coverage.[24]  Mr. Degroot further also confirmed he received quarterly benefit updates in the mail from AT&T/Lucent.[25]

Mr. Degroot's pension payments and pension records were administered by the AT&T Pension Service Center and later (and currently) by the Lucent Pension Service Center.[26] The AT&T Pension Service Center provided monthly tapes to UMS which tapes contained the names and addresses of all AT&T pensioners.[27]  It was UMS's contractual duty to then send benefit plan SPDs and other benefit correspondence, including the Plan descriptions, to all pensioners listed on the monthly pension tapes.[28]  UMS also sent quarterly benefits updates to all pensioners based on the same monthly pensioner tapes, called *Encore*.[29]  Mr. Degroot confirmed that he received this quarterly update.[30]  Due to the fact that Mr. Degroot received in the mail, the monthly pension stubs from the AT&T Pension Service Center (and later and currently, the Lucent Pension Service Center), his name and address were automatically sent to UMS – so that

---

[21]   Exhibit C – Degroo 0225, Exhibit B pp 43-46.
[22]   Exhibit C – Degroo 0225, Exhibit B pp 43-46.
[23]   Exhibit C – Degroo 0225-0226, Exhibit B pp 43-46.
[24]   Exhibit B – pp 65-66.
[25]   Exhibit B – pp 47-49.
[26]   Exhibit A – para 6.
[27]   Exhibit A – para 6.
[28]   Exhibit A – para 5-11.
[29]   Exhibit A – para 8.
[30]   Exhibit B – pp 47-49.

UMS could mail him periodic SPDs, including the 1993 and 1996 SPDs and his copy of the quarterly *Encore*, which Mr. Degroot confirmed he received.[31]  Thus, it is clear, Mr. Degroot was indeed on the UMS mailing list – and indisputable that, as a result, he received the 1993 and 1996 SPDs sent by UMS to his address.

In 1993, UMS mailed a welfare benefits SPD to all AT&T retirees listed on the pension tapes, including Mr. Degroot, entitled the "AT&T SPD for Retired Employees ("1993 Retiree SPD").[32]  The 1993 Retiree SPD covered all benefits under which an AT&T retiree might benefit.[33]  It described medical, dental and life insurance benefits.[34]  It was distributed to all retirees because "retiree medical and dental" and basic life insurance coverage was applicable to all eligible retirees with a service pension under the AT&T Management Pension Plan, including Mr. Degroot.[35]  Importantly, it also described the supplemental coverage under the Plan, and again described in detail that the Plan coverage terminated automatically at age 65 and that retirees could at that point, convert to an individual policy.[36]

In 1996, portions of AT&T were spun off to Lucent, including the division of AT&T (old Western Electric) at which Mr. Degroot had been an employee/retiree.[37]  Mr. Degroot confirmed that he learned about this spinoff by reading his quarterly benefits update (i.e. *Encore*), mailed to him by UMS.[38]  During the transition, an electronic tape of retiree information was passed from the AT&T Pension Service Center and the Lucent Pension Service Center to UMS so that UMS could continue to provide AT&T retirees their pertinent benefit information, including SPDs.[39]

At the time that Lucent split from AT&T in 1996, UMS sent all of the AT&T retirees a letter informing them that Lucent would continue to administer their retiree benefits and that the Lucent group life plans would be equivalent to the Plan in effect at the time of the

---

[31]   Exhibit B – pp 47-49.
[32]   Exhibit C – Degroo 0035.
[33]   Exhibit C – Degroo 0032-0173.
[34]   Exhibit C – Degroo 0037.
[35]   Exhibit C – Degroo 0049, 0266; Exhibit B pp 34-36.
[36]   Exhibit C – Degroo 0147-0151.
[37]   Exhibit C – Degroo 0192-0200.
[38]   Exhibit B – pp 47-49.
[39]   Exhibit A – para 10-14.

SL1 268604v1/61450.042

spin-off, ie. those outlined in the 1993 Retiree SPD.[40]  Mr. Degroot confirmed that he may have received this information,  but could not remember specifically.[41]  After this initial letter was mailed, the next phase was to send the 1996 Lucent Retiree SPDs to all Lucent retirees and applicable AT&T retirees.[42]  (The 1996 SPD would have been in effect at the time that Mr. Degroot turned 65 in 1999.)  Additionally, after the SPDs were mailed, retirees could also call the UMS hotline to obtain additional copies of the SPDs.[43]  The only recorded call made by Mr. Degroot to UMS was on January 21, 2000 – which was about five months past the date upon which Mr. Degroot could have elected to convert to an individual policy.[44]  Mr. Degroot did not contact Lucent or MetLife to convert his Plan coverage to an individual policy within the 31-day conversion period described again in the 1996 SPD.[45]

Between January 1, 1990 and July 31, 1999, (when he attained age 65), Mr. Degroot participated in the Plan pursuant to his status as a retired employee.[46]  Mr. Degroot's coverage under the Plan automatically terminated when he attained age 65, in accordance with the many SPDs he had received as an active and retired employee.[47]  The SPDs provided through UMS to Mr. Degroot as an active employee and pensioner provided that retired employees could elect to convert their coverage under the Plan to an individual policy, if such election was communicated to MetLife within 31 days after the retired employee attained age 65.[48]  In accordance with the Plan and SPD, Mr. Degroot's coverage under the Plan ended on July 31, 1999 and he had 31 days from that date to communicate his desire to convert to an individual policy to MetLife or Lucent.  Mr. Degroot failed to convert to an individual policy within the time limits provided in the SPDs and policy.  As a result of Mr. Degroot's failure to timely

---

[40]    Exhibit C – Degroo 0192-0200.
[41]    Exhibit B – pp 48-49.
[42]    Exhibit C – Degroo 0192-0193, 0207-0219.
[43]    Exhibit C – Degroo 0192; Exhibit A – para 8, 13.
[44]    Exhibit C – Degroo 0192.
[45]    Exhibit C – Degroo 0212-0214.
[46]    Exhibit B pp 33-34.
[47]    Exhibit C – Degroo 0212-0214.
[48]    Exhibit C – Degroo 0238-0265.

26

convert to individual coverage, Defendants denied his claim for benefits in the claim and appeal process.[49]

Specifically, Mr. Degroot's spouse first contacted UMS (and therefore the Plan) to inquire about the status of his coverage on January 21, 2000, even though Mr. Degroot's coverage under the Plan ended on July 31, 1999.  Mr. Degroot ocnfirmed that neither he or his spouse ever contacted the Plan about the status of his Plan coverage or benefits or conversion rights until January 2000.[50]  Thus, it took Mr. Degroot's spouse over four months following the cessation of Plan deductions to inquire about the status of Mr. Degroot's coverage under the Plan, long past the expiration of the conversion period for individual coverage.[51]  Throughout the following year and a half, Mr. Degroot's attorneys and the Defendants corresponded pursuant to the ERISA claims and appeals process, regarding Degroot's repeated requests to retroactively convert to individual coverage.  The Defendants repeatedly denied Plaintiff's claim for death benefits under the Plan and the request for a retroactive conversion to an individual policy, specifically on June 8, 2000, May 23, 2001, June 15, 2001 and the final denial letter on July 10, 2001.[52]  Defendants repeatedly denied Plaintiff's claim for benefits based upon the indisputable fact that Plaintiff failed to elect to convert to individual coverage (or even inquire about continuing coverage) within the conversion period of 31 days following July 31, 1999, i.e. the date Plaintiff reached age 65, in accordance with the numerous SPDs provided to Plaintiff from 1989 through 1996.  The Defendants provided copies of all such SPDs to Plaintiff and his counsel upon their requests. The Defendants' denial letters also noted that the Plan (and underlying group policy) were sitused in Deleware and, therefore, the Plaintiff's application and citation of Pennsylvania notice statutes was inappropriate to the Plan.[53]

After the conclusion of the claim and appeals process, Plaintiff instituted the subject litigation on March 26, 2002.  Mr. Degroot alleged in the complaint that he relied upon "Lucent's representation that he would continue to be covered by the aforementioned life

---

[49]   Exhibit C- Degroo 0192-0193, 0203-0204
[50]   Exhibit B – pp. 54-60, 65-66, 69.
[51]   Exhibit C – Degroo 0192.
[52]   Exhibit C – Degroo 0232-0237, 0176-0221
[53]   Exhibit C – Degroo 0232-0237, 0176-0221

insurance for the rest of his life."[54]  However, Mr. Degroot confirmed in his deposition that neither defendant ever made any such verbal or written "representation" to that effect.[55]  Rather, Mr. Degroot explained that he personally believed his coverage under the plan would be eternal because somebody at Western Electric told him (29 years prior to his retirement) "how great the insurance was."[56]  Finally, Mr. Degroot admitted several times throughout his deposition that he may have received details of the Plan, but he could not remember whether he did – and if he did, he did not retain any such Plan descriptions.[57]

## II. ARGUMENT

### A. PLAINTIFF'S CASE SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Plaintiff's only ERISA claim in this case is asserted under ERISA §502(a)(3)(B), which redresses breaches of fiduciary duties.  However, the ultimate relief sought by Plaintiff is a retroactive individual policy of life insurance provided under the terms of the Plan.  Thus, Plaintiff clearly makes a "claim for benefits" under the ERISA Plan, but couches his claim as a breach of fiduciary duty under ERISA §502(a)(3)(B).   However, the Supreme Court and the Third Circuit repeatedly have held that a claim for benefits under an ERISA plan must be brought under ERISA §502(a)(1)(B), and not under §502(a)(3)(B).

In *Varity Corp. v. Howe*, 116 S. Ct. 1065 (1996), the Supreme Court sharply limited the circumstances under which a party may assert a cause of action under ERISA § 502(a)(3).  The Supreme Court stated that:

> We should expect that courts, in fashioning "appropriate" equitable relief, will keep in mind the "special nature and purpose of employee benefit plans," and will respect the "policy choices reflected in the inclusion of certain remedies and the exclusion of others." *Pilot Life Ins. Co.,* 481 U.S., at 54, 107 S. Ct., at 1556.  See also *Russell*, 473 U.S., at 147, 105 S. Ct., at 3092-3093; *Mertens*, 508 U.S., at 263-264, 113 S. Ct., at 2072.  Thus, we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable

---

[54]  Complaint, p 2.
[55]  Exhibit B – pp. 76-79, 83-84
[56]  Exhibit B – pp 76-79, 83-84.
[57]  Exhibit B, pp 36, 47-48, 81.

26

> relief, in which case such relief normally would not be 'appropriate.' Cf. *Russell, supra,* at 144, 105 S. Ct., at 3091.
>
> But that is not the case here. The plaintiffs in this case could not proceed under the *first* subsection because they were no longer members of the Massey-Ferguson plan and, therefore, had no "benefits due [them] under the terms of [the] plan." §502(a)(1)(B). They could not proceed under the *second* subsection because that provision, tied to §409, does not provide a remedy for individual beneficiaries. *Russell, supra,* at 144, 105 S. Ct., at 3091. They must rely on the *third* subsection or they have no remedy at all. We are not aware of any ERISA-related purpose that denial of a remedy would serve. Rather, we believe that granting a remedy is consistent with the literal language of the statute, the Act's purposes, and pre-existing trust law.

*Id.* at 1079. (Italics in original). Unlike the plaintiffs in *Varity,* Plaintiff here claims to be due a benefit (the right to convert) under the terms of the Plan.

In *Ream v. Frey*, 107 F.3d 147 (3d Cir. 1997), the Third Circuit followed *Varity.* There*,* the fiduciary trustee of the assets of a medical benefit plan had resigned and transferred the assets to an irresponsible party who absconded with the plan's assets. The participants, therefore, were left without an adequate remedy against the employee medical benefit plan. The Third Circuit recognized the key point in *Varity*, which is that claims for "other appropriate equitable relief" are limited to situations where the participant was without an adequate remedy under § 502(a)(1)(B). The Third Circuit stated:

> As the Court explained in *Varity*, "one can read § 409 [29 U.S.C. § 1109] [which establishes liability for breach of fiduciary duty] as reflecting a special congressional concern about plan asset management without also finding that Congress intended that section to contain the exclusive set of remedies for every kind of fiduciary breach." *Varity* at 1077. The Court found this reading "consistent with [ERISA] § 502's overall structure" which provides two "catchalls" which "act as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Id.* at 1077-78. The Supreme Court did caution, however, that in fashioning "appropriate" equitable relief, courts should "keep in mind the special nature and purpose of employee benefit plans, and . . . respect the policy choices reflected in the inclusion of certain remedies and the exclusion of others." *Id.* at 1079 (citations and internal quotation marks omitted). Where Congress otherwise has provided for appropriate relief for the injury suffered by a beneficiary, further equitable relief ought not be provided.

107 F.3d at 152 (emphasis added). Indeed, the Third Circuit went on to say:

> Furthermore, this is not a case in which an individual plan beneficiary charges a fiduciary with a breach of fiduciary duties with respect to a functioning plan. <u>In that situation it might be inappropriate to permit a beneficiary to seek personal relief as a recovery by the plan effectively would make the beneficiary whole</u>. We emphasize, therefore, that a court must apply ERISA § 502(a)(3)(B) cautiously when an individual plan beneficiary seeks "appropriate equitable relief." (footnote omitted) Such caution would be consistent with the concerns the Supreme Court expressed in *Varity* about a court being too expansive in granting relief. *Varity* at 1079.

107 F.3d at 152-53 (emphasis added).

ERISA § 502(a)(3) is a "catchall" provision that cannot not be used when another ERISA cause of action is available. *Brown v. Blue Cross and Blue Shield of Michigan, Inc.,* 1996 U.S. LEXIS 13715 (E.D. Mich. September 16, 1996) (J. Duggan); *Wald v. Southwestern Bell Corp. Customcare Medical Plan*, 83 F.3d 1002 (8th Cir. 1996); *Perlman v. Swiss Bank Corp.* 916 F. Supp. 843 (N.D. Ill. 1996) (In granting motion to dismiss, court said that a claim for benefits cannot be "bootstrapped" into a fiduciary claim, even if a duty is alleged separate from the claim for benefits; moreover, compensatory damages and restitution are not available under §502(a)(3) where there is an express plan and an adequate remedy at law); *Coyne & Delany Co. v. Blue Cross & Blue Shield of Va.,* 102 F.3d 712 (4th Cir. 1996) (Plan benefits are not "appropriate" relief under § 502(a)(3); *Varity* did not authorize breach of fiduciary duty claims for benefits where § 502(a)(1)(B) provides adequate relief).

In *Wald v. Southwestern Bell Corp. Customcare Medical Plan*, 83 F.3d 1002 (8th Cir. 1996), the plaintiff sought medical benefits after the plan administrator denied her claim for reimbursement for a GIFT procedure-an assisted fertilization procedure. In count I of the plaintiff's proffered amended complaint, she challenged the denial of benefits; in count II, she proffered to allege that the plan administration breached its ERISA fiduciary duties in denying her claim. The Eighth Circuit affirmed the district court's refusal to permit plaintiff to file the proffered count II. Applying the analysis of *Varity* presented above, the Eighth Circuit held that

since the plaintiff had an adequate remedy under § 502(a)(1)(B), she did not have a cause of

action under § 502(a)(3) for an individual recovery for breach of fiduciary duty.

Degroot has an adequate remedy under ERISA § 502(a)(1)(B) because that is the

section that entitled a participant to bring a cause of action for benefits or to assert rights he or

she has under the terms of an ERISA Plan.[58]  Because Plaintiff has couched her entire case for

recovery under ERISA §502(a)(3)(B) – this Court should dismiss the case for failure to state a

cause of action.

**B.    IF PLAINTIFF'S CLAIM IS CONSTRUED AS A CLAIM TO CONVERT UNDER ERISA § 502(A)(1)(B), THE PLAN IS ENTITLED TO SUMMARY JUDGMENT.**

**1.    The Arbitrary And Capricious Standard Of Review Applies To The Decision Of The Plan To Deny Plaintiff's Claim To Convert.**

The Plan's 1996 SPD provides:

> Metlife shall serve as the final review committee under the Plans and shall have sole and complete discretionary authority to determine conclusively for all parties, and in accordance with the terms of the documents or instruments governing the Plans, any and all questions arising from administration of the Plans and interpretation of all Plan provisions, determination of all questions relating to participation of eligible active and retired employees and eligibility for benefits, determination of all relevant facts, the amount and type of benefits payable to any participant, lawful spouse or beneficiary, and construction of all terms of the Plans. Notwithstanding the foregoing, Lucent Technologies Inc. shall have sole and complete discretionary authority to determine questions relating to eligibility of active and retired employees to participate in the Plans and to amend or terminate the Plans at any time.  Respective decisions by MetLife and Lucent Technologies Inc. shall be conclusive and binding on all parties and not subject to further review.[59]

In *Firestone Tire and Rubber Company v. Bruch*, 498 U.S. 101, 109 S.Ct. 948

(1989), the Supreme Court held that where the administrator or a fiduciary of the plan is given

discretionary authority to determine eligibility for benefits or to construe the terms of the plan,

the denial of benefits challenged under ERISA is to be reviewed under the arbitrary and

---

[58]   Of course, while Degroot has an adequate remedy under ERISA § 502(a)(1)(B), that is not to say that that claim has merit.  It does not, because he failed, as he admits, to comply with the Plan's precondition to conversion: He failed to file an application to convert within 31 days of his attainment of age 65.

[59]   Exhibit C - DeGroo 0217 and 0157.

capricious standard of review.  As the Supreme Court interprets the arbitrary and capricious

standard, it is a deferential standard of review.  The decision of the plan is not subject to the

control of the court except to prevent an abuse of discretion.  See *Firestone*, 498 U.S. at 114-115,

quoting Restatement (Second) of Trusts, § 187, Comment (1959).

Consequently, on a motion for summary judgment, "defendant need only show

that the evidence presents no genuine factual issue to controvert their claim that the denial was

not a 'clear error' and was 'rational.'"  *Schiffler v. The Equitable*, 838 F.2d 78 (3d Cir. 1988),

citing *FCC v. National Citizens Committee for Broadcasting*, 436 U.S. 775, 803 (1978) and

*Bowman Transportation, Inc. v. Arkansas - Best Freight System, Inc.,* 419 U.S. 281, 285 (1974).

A court is not free to substitute its own judgment for that of the defendants in determining

eligibility for plan benefits.  *Orvosh v. Program of Group Insurance For Salaried Employees of

Volkswagen of America.,* 222 F.3d 123, 129 (3d Cir. 2000).

In addition, the Third Circuit has extended the *Firestone* approach to questions of

fact, when the ERISA plan so provides.  It has held:

> In conclusion, ERISA plan administrator's <u>fact</u> <u>based</u> <u>determinations</u> are to be
> reviewed *de novo* unless the plan specifically provides that his determinations of
> fact be given deference or grants the administrator authority to make [factual]
> determinations . . .

*Luby v. Teamsters Health, Welfare, and Pension Trust Funds*, 944 F.2d 1176, 1187 (3d Cir.

1991) (Underlining and brackets added).

## 2.    The Decision of the Plan.

The Plan expressly granted Defendants the full discretion and authority to construe and

interpret the Plan, to make factual and eligibility determinations, and to make determinations of

fact.  This standard of review applies to those factual determinations that would lead MetLife, on

behalf of the Plan, to determine (1) whether a participant's retiree coverage under the Plan

terminated at age 65, (2) whether a participant timely elected to convert to an individual policy at

the expiration of Plan coverage and (3) where the Plan was issued, delivered and sitused for state law purposes.

Accordingly, the decision of Defendants, on behalf of the Plan, that the Degroot's Plan coverage ended automatically upon his attainment of age 65, i.e. on July 31, 1999 and that he failed to elected to convert to an individual policy within 31 days of that date, and finally that the Plan was issued, delivered and sitused in Delaware – not Pennsylvania[60] -- and subject to any applicable Delaware laws (unless preempted by ERISA), must be reviewed under the arbitrary and capricious standard of review both as to its findings of fact and as to its interpretation of the terms of the Plan.

## 2.    State Notice Provisions Are Preempted And Not Saved By ERISA

MetLife determination that Degroot was not entitled to retroactively elect individual policy coverage was not arbitrary and capricious, because the Plan does not provide for retroactive conversions after the 31 day election period has expired.

Degroot's theory of recovery is that he was never given notice that his death benefit under the Plan would automatically terminate at age 65. Plaintiff asserts that certain Pennsylvania state notice obligations regarding life insurance conversion options found at 40 PS 532.7 are imposed upon the Plan. However, as MetLife expressly held during the appeals process, the group policy issued by MetLife to fund the Plan was found to be sitused and delivered in Delaware, not in Pennsylvania. [61] Thus, 40 PS 532.7, the statute upon which Plaintiff bases his entire case, is inapplicable because the Pennsylvania statute limits its application to a "group life insurance policy hereafter delivered in" Pennsylvania. Because the

---

[60]    The Plan's funding vehicle (i.e., the policy) provides:

> Any Group Policy issued upon this application will be delivered in Delaware. Such Policy wil be considered a Delaware contract. The terms of such policy will be construed in accordance with the laws of that jurisdiction.

Exhibit C – Degroo 0238-0239.

[61]    Exhibit C – Degroo 0204; See, MetLife Group Policy No. 95085-G at Exhibit C – Degroo 0238-0239.

Plan was delivered in Delaware, 40 PS 532.7 does not apply to the Plan under any circumstances.

However, this Court does not need to address whether Delaware's notice of conversion right provisions applies, because ERISA preempts this Delaware law, which is found in the funding policy. ERISA § 514, 29 U.S.C. § 1144.[62]

**A.    Defendants Are Entitled To Summary Judgment Because
18 Del. Code Ann. §3125 Is Preempted And
Not "Saved" From Preemtion Under ERISA.**

Since Degroot's claim is based upon a violation of the Pennsylvania conversion notice statute – 40 PS 532.7 – which is not applicable to the Delaware-issued, delivered and sitused Plan and group policy, Defendants are entitled to summary judgment.  Should the Court wish to evaluate the substantially identical Delaware version of Pennsylvania's 40 PS 532.7, i.e., 18 Del. Code Ann. §3125, it will find that such law is preempted by ERISA.[63]

*1.  18 Del. Code Ann. §3125[64] Is Preempted under ERISA §514*

If Plaintiff were to allege that under 18 Del. Code Ann. §3125, Defendants failed to provide conversion information and that their alleged failure to do so resulted in an extended (indefinite) or implied contract of continued coverage under the Plan, then that claim would be preempted by ERISA.

The Supreme Court in *California Div. Of Labor Standards Enforcemnt v. Dillingham Construction,* 519 U.S. 316, 323 (1997), held that, "a law 'relates to' a covered employee benefit plan . . . if it (1) has a connection with or (2) reference to such a plan."

The First, Second and Fourth Circuits have stated that state law claims relating to conversion rights are preempted by ERISA.[65]  See *White v. Provident Life & Accident Insurance*

---

[62]    Of course, as will be demonstrated later, even if Delaware law were not preempted, the Plan's SPD's satisfied any notice of conversion right under Delaware (or Pennsylvania) law.

[63]    Defendants, in what follows, will cite the nearly identical Pennsylvania provision 40 PS 532.7, that corresponds to 18 Del. Code Ann. §3125 to illustrate the similarity in the statute's content and application.

[64]    40 PS 532.7

*Co.*, 114 F. 3d 26, 28 (4th Cir.), *cert. denied*, 522 U.S. 950, 118 S. Ct. 369; *Howard v. Gleason*, 901 F.2d 1154, 1157-58 (2nd Cir. 1990); see also *Demars v. Cigna Corp.*, 173 F.3d 443, 450 (1st Cir. 1999).  Also, recently, the court in *Bonestroo v. Continental Life and Accident Company*, 79 F. Supp. 2d 1041 (N.D. Iowa 1999), found that a state statute regarding life insurance conversion rights, similar to 18 Del. Code Ann. §3125, "related to" an employee benefit plan and was therefore preempted by ERISA.

Thus, 18 Del. Code Ann. §3125 "relates to" ERISA plans, and ERISA preempts 18 Del. Code Ann. §3125… unless it is otherwise "saved" from preemption.

2. *18 Del. Code Ann. §3125[66] Is Not "Saved" From ERISA Preemption Under ERISA §514(b)*

Title 18 Del. Code Ann. §3125, is not saved from preemption.  The "savings" clause excepts from preemption "any law of any State which regulates insurance".  29 U.S.C. 1144(b)(2)(A).  In contrast to the breadth given ERISA's preemption clause, both the savings clause and the phrase "regulates insurance" are narrowly construed.  See *FMC v. Holliday*, 498 U.S. 52, 57-59 (1990); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 104 (1985) (ERISA's "all-inclusive preemption provision and its enumeration of narrow, specific exceptions to that provision" require narrow construction of "savings" provision).  This narrow reading is necessary to provide the certainty and uniformity necessary for proper ERISA plan administration.  *Pilot Life v. Dedeaux*, 481 U.S. 41, 46 (1987).  Without preemption, "employers with multistate operations would be faced with different notice obligations in different states … [t]his is precisely the 'patchwork scheme of regulation' among several states that ERISA was designed to avoid. . ." *Howard v. Gleason Corporation*, 901 F.2d 1154, 1158 (2d Cir.), citing, *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11 (1987).

Against this overarching construction principle, in *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41 (1987), the Supreme Court articulated a two-part test to determine whether

---

[65]   See also *Drexelbrook Engineering Company v. The Travelers Insurance Company*, 710 F. Supp. 590 (E.D. Pa 1989), where the court found that the required conversion notice under 40 PS 756.2, i.e., medical insurance conversion, related directly to an ERISA plan and therefore the preemption clause came into play.
[66]   40 PS 532.7

a state law "regulates insurance" within the meaning of the ERISA savings clause.  The first part of the test requires the court to apply a "common sense" view of the phrase "regulates insurance" and to determine whether the state law is appropriately characterized as such.  The second part of the test requires the court to analyze the three "McCarran-Ferguson" factors the Supreme Court identified for determining whether an activity comes within the "business of insurance."  *Id.* a 48-49.  The three McCarran-Ferguson factors are: (1) whether the practice has the effect of transferring or spreading a policyholder's risk; (2) whether the practice is an integral part of the policy relationship between the insurer and the insured; and (3) whether the practice is limited to entities within the insurance industry.  *Id.*  If all three McCarran-Ferguson factors are satisfied, then the activity comes within the "business of insurance" and the second part of the test is satisfied.  In the instant case, neither part of the *Pilot Life* test has been met and, indeed, none of the McCarran-Ferguson factors are satisfied.

In *Howard v. Gleason Corporation*, 901 F.2d 1154 (2nd Cir. 1990), the Second Circuit applied this two-pronged test to New York Insurance Law § 4216(d), a statutory provision regarding notice of conversion privileges from a group life plan to an individual policy, and held that the provision was preempted by ERISA.  *Id.* at 1159.  To satisfy the "common sense" prong of the *Pilot Life* test, the "law must not just have an impact on the insurance industry, but must be **specifically directed** toward the industry."  *Id.* at 1158 (quoting *Pilot Life*, 481 U.S. at 50; emphasis added).  Because the notice requirements of New York Insurance Law § 4216(d) could be fulfilled by <u>either</u> the group policy holder (in that case, the employer), or by the insurer, the statute was <u>not specifically directed</u> toward the insurance industry.  *Id.*

Degroot claims that Defendants were obliged to provide notice of the conversion option. The claims made and remedies sought by Plaintiff emanate from contract law and can be asserted against insurance companies and employers alike. 18 Del. Code Ann. §3125.  The Delaware Superior Court has stated that 18 Del. Code Ann. §3125 can apply equally to the employer and insurer.  *Murray v. Metropolitan Life Insurance Co.,* 1981 Del. Super. Lexis 821,

823 (Del. Sup. Ct. 1981). Thus, 18 Del. Code Ann. §3125 is not specifically directed toward the insurance industry and, therefore, fails the "common sense" test of *Pilot Life*.

Plaintiff also cannot satisfy any of the three McCarran-Ferguson factors.

With respect to the first McCarran-Ferguson factor, *i.e.*, the transfer or spreading of policyholder's risk, it is undisputed that Lucent, not Mr. Degroot, was the "policyholder." Thus, the first factor cannot be met here. Neither the exercise of the conversion option by the participant nor the sending of notice of this option transfers or spreads any risk of the group policyholder, Lucent. It is true that the *exercise* of the option would transfer risk from the individual to MetLife, but this has no effect on the policyholder's (Lucent's) risk.

The Supreme Court has stated that: "The transfer of risk from insured to insurer is effected by means of the contract between the parties -- the insurance policy -- and that transfer is complete at the time that the contract is entered". *Union Labor Life Insurance Co. v. Pireno*, 458 U.S. 119, 130 (1982). If the policy limits coverage to a certain quality or extent, the Supreme Court reasoned that that limitation is the measure of risk that has actually been transferred to the insurer at the time the contract is negotiated and entered.

> The Petitioner's argument contains the unspoken premise that the transfer of risk from an insured to his insurer actually takes place not when the contract between those parties is completed, but rather only when the insured's claim is settled. This premise is contrary to the fundamental principle of insurance that the insurance policy defines the scope of risk assumed by the insurer from the Insured".

*Id*.

Title 18 Del. Code Ann. §3125 does not transfer or spread the risk between the insurer and policyholder -- Lucent -- under the Plan. 18 Del. Code Ann. §3125 specifically states in regard to a failure to provide notice, that "nothing herein contained shall be construed to continue any insurance beyond the period provided in such policy." Therefore, the notice provision provides explicitly that it does not change the insurance contract and insurance coverage agreed upon between Lucent and MetLife. The risks that MetLife and Lucent

26

accepted, as insurer and insured, were complete as between them at the time the contract was entered.

In *Howard*, the Court of Appeals found that the New York statute failed to meet the second McCarran-Ferguson test.   According to the Second Circuit, notice by an employer or insurer of the conversion option is not integral to the insurer-insured relationship.  Specifically, § 4216(d) did not dictate any of the terms of the insurance contract itself, but merely set forth a notice requirement where the group policy permitted an individual to convert from a group to an individual insurance policy.  Likewise, § 3125 does not dictate that an insurance contract must contain any provision.  Section 3125 is not integral as between MetLife and Lucent, the insurer and the insured.

Finally, the Court of Appeals in *Howard* held that § 4216(d) failed the third McCarran-Ferguson factor because the law was not limited to entities within the insurance industry.  *Id.*  The Delaware Superior Court in *Murray* also confirmed that the requirements of 18 Del Code Ann. §3125 could apply equally to employer and insurer and, thus, not specifically directed to the insurance industry.  *Murray* at 823.  Indeed, Plaintiff's suggestion that Lucent and/or MetLife were both responsible for advising Mr. Degroot of his conversion option directly undermines any attempt to limit any such law to the insurance industry.

Plaintiff cannot satisfy the common sense test or any of the three McCarren-Ferguson factors.  Therefore, 18 Del. Code Ann. §3125 is preempted and not "saved" by ERISA. *Accord Peterson v. American Life & Health Ins. Co.*, 48 F.3d 404, 409-10 (9th Cir. 1995); *Painter v. Golden Rule Ins. Co.*, 121 F.3d  436, 440 (8th Cir. 1997) (additional citations omitted).[67]

---

[67]    Finally, ERISA provides its own extensive rules on how notice of plan terms and provisions must be provided to ERISA plan participants and beneficiaries.  Namely ERISA §§ 102-104 provides a comprehensive system to instruct ERISA plan sponsors on when and how to provide summary plan descriptions and annual reports to ERISA plan participants and beneficiaries.  As noted earlier in this brief, the Defendants provided numerous and periodic versions of the Plan SPD to Plaintiff and all other Plan participants, in accordance with the "notice" requirements under ERISA.  Thus, ERISA substantively preempts any Delaware (or Pennsylvania)

**B.    Defendants Are Entitled To Summary Judgment Because Defendants Complied With 18 Del. Code Ann. §3125[68]**

Alternatively, were the court to find that ERISA did not preempt 18 Del. Code Ann. §3125, the Defendants complied with the requirements of 18 Del. Code Ann. §3125 through the repeated provision of current SPD's to Mr. Degroot.  18 Del. Code Ann. §3125 provides:

> If any individual insured under a group life insurance policy hereafter delivered in this State becomes entitled under the terms of such policy to have an individual policy of life insurance issued without evidence of insurability, subject to making of application and payment of the first premium within the period specified in such policy, and if such individual is not given notice of the existence of such right at least 15 days prior to the expiration date of such period, then in such event the individual shall have an additional period within which to exercise such right, but nothing herein contained shall be construed to continue any insurance beyond the period provided in such policy.  This additional period shall expire 15 days next after the individual is given such notice but in no event shall such additional period extend beyond 60 days next after the expiration date of the period provided in such policy.  Written notice presented to the individual or mailed by the insurer to the last known address of the individual as furnished by the policyholder shall constitute notice for the purpose of this section.

18 Del. Code Ann. §3125 requires written notice of the conversion option to be given to the employee "at least fifteen days prior to the expiration date of such period".  "Such period" refers to the time that coverage terminates, here July 31, 1999.  The statutory provision does not say notice must be received "within 15 days" but rather it says specifically "at least 15 days prior to."  If the participant is provided with a certificate or SPD that sets forth the terms of the conversion provision, the insurer is not obligated to notify the participant of the conversion provision again when the group coverage discontinues.  *Murray v. Metropolitan Life Ins. Co;,* 1981 Del. Super. Lexis 821 (1981).  <u>If</u> Defendants were required by 18 Del. Code Ann. §3125 to give notice, <u>any</u> written explanation of the conversion rights on or prior to July 15, 1999 would satisfy such requirement.  Mr. Degroot received written notice of his conversion rights at least three times between 1987 and 1999.

---

[68]    conversion right notice provision and there is no claim in this case by Degroot, that Defendants in any way failed to comply with ERISA's notice requirements.
    40 PS 532.7

The court in *Aronson vs. Butcher Workmen's Local 174*, No. 81 Civ. 3230 (WDD) (S.D. NY 1982), found, in a similar situation, that an employee had received notice of his insurance conversion rights through a summary plan description distributed in 1972, even though the employee terminated employment in 1977.

Lucent, acting on behalf of the Plan, gave written notice of the conversion right to Mr. Degroot in the 1987, 1993 and 1996 SPDs:  All, at least 15 days prior to Mr. Degroot's group coverage expiration, i.e., July 31, 1999 and, therefore, Defendants complied in every respect with 18 Del. Code Ann. §3125.  Defendant should therefore prevail on summary judgment.

**C.    Defendants Are Entitled to Summary Judgment, Because Even If ERISA Did Not Preempt §3125[69] And Lucent Failed To Provide SPD's, Which Contained Conversion Notice, Degroot's Conversion Right Cannot Be Extended Beyond The Period Provided In The Policy And The Conversion Period Expired .**

The intent of 18 Del. Code Ann. §3125 is simple:  To provide for an additional period (after the conversion period prescribed by the plan has ended) within which a recently terminated employee (or an employee or former employee whose group coverage has recently been terminated) may elect to convert a benefit under an ERISA plan to an individual policy. Under the statute, the additional period is only granted if such individual is not given notice of the existence of his right to convert at least fifteen days prior to the expiration date of the conversion period prescribed by the plan.  Importantly, by the explicit terms of 18 Del. Code Ann. §3125, the notice requirement contained therein shall not "be construed to continue any insurance beyond the period provided in such policy".

In this case, the terms of the Plan provide that group coverage under the Plan terminates automatically "on the last day of the month in which you reach age 65."[70]  Thus, for Mr. Degroot, the "period provided in such policy" ended on July 31, 1999.  18 Del. Code Ann. §3125 cannot extend the group coverage beyond July 31, 1999.

---

[69]    40 PS 532.7
[70]    Exhibit C – Degroo 0212.

Furthermore, the Delaware Superior Court in *Murray* held that failure to comply with 18 Del. Code Ann. §3125, results only in the extension of time (from 31 days to 91 days) to elect to purchase a conversion policy, but does not extend Plan benefit coverage beyond the Plan's specified contractual coverage period.

> This language neither expressly nor by necessary implication imposes a duty upon an employer or insurer to give an employee a later notification of a conversion privilege upon the expiration of the group coverage. Significantly, under 18 Del. Code Ann. §3123, no event, not even the complete failure to provide notice, extends the conversion period for more than sixty days after the expiration of the conversion period provided in the policy. Thus, by necessary implication, §3123 contemplated the situation where the employee receives no notice of the conversion privilege at the time his group policy expires and that is all. Had the Legislature intended otherwise, it would have provided for conversion by law or an indefinite extension of the conversion period.

Applying the *Murray* court's rationale to Plaintiff, even if 18 Del. Code Ann. §3125 were applicable to the Defendants under the Plan, and even if, *arguendo,* had Defendants not provided numerous SPDs to Plaintiff notifying him of his conversion rights, this "failure" under 18 Del. Code Ann. §3125 would have <u>at most</u> resulted in Plaintiff's conversion period being extended 91 days past his 65th birthday, i.e. until October 29, 1999. Degroot did not convert prior to October 29, 1999. As a result, Defendants are entitled to summary judgment.

**D.    Defendants Are Entitled To Summary Judgment Because Lucent Complied With <u>40 PS 532.7 (the Pennsylvania equivalent of 18 Del. Code Ann. §3125)</u>**

Alternatively, if this Court were to find that MetLife was arbitrary and capricious in its finding that the Plan was delivered and sitused in Pennsylvania, and finds that Pennsylvania 40 PS 532.7 is not preempted by ERISA, then Defendants are still entitled to summary judgment. Title 40 PS 532.7 is essentially identical to 18 Del. Code Ann. §3125 and provides:

> If any individual insured under a group life insurance policy hereafter delivered in this State becomes entitled under the terms of such policy to have an individual policy of life insurance issued to him without evidence of insurability, subject to making of application and payment of the first premium within the period specified in such policy, and if such individual is not given notice of the existence of such right at least fifteen days prior to the expiration date of such period, then, in such event the individual shall have an additional period within which to exercise such right, but nothing herein contained shall be construed to continue any insurance beyond the period provided in such policy. This additional period shall expire fifteen days next after the individual is given such notice

but in no event shall such additional period extend beyond sixty days next after the expiration date of the period provided in such policy.  Written notice presented to the individual or mailed by the policyholder to the last known address of the individual or mailed by the insurer to the last known address of the individual as furnished by the policy holder shall constitute notice for the purpose of this section.

Therefore, all of the aforementioned arguments regarding compliance with Delaware notice timelines would apply under 40 PS 532.7.

## III.  CONCLUSION

Based upon the forgoing, Defendants respectfully suggest that they are entitled to the entry of summary judgment in their favor.

Dated February 10, 2003                    Respectfully submitted,


                                           Daniel E. Wille (PA I.D. No. 39045)
                                           Michael D. Jones (PA I.D. No. 65540)
                                           Cher E. Wynkoop (PA I.D. No 85482)
                                           REED SMITH LLP
                                           435 Sixth Avenue
                                           Pittsburgh, PA 15219
                                           (412) 288-3294/4584

                                           Counsel to MetLife and Lucent

SL1 268604v1/61450.042

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this date, a true and correct copy of the foregoing BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT upon the following counsel of record, by depositing the same in the United States mail, postage prepaid, addressed as follows:

Donald P. Russo, Esquire
P.O. Box 1890
Bethlehem, PA  18016-0890

_____

Date:  February 11, 2003

SL1 268604v1/61450.042