<u>IN THE UNITED STATES DISTRICT COURT</u>
<u>FOR THE EASTERN DISTRICT OF PENNSYLVANIA</u>

ELIZABETH DEGROOT, Attorney          )
in Fact for Roger Degroot,           )   Civil Action
                                     )   No. 02-CV-03577
            Plaintiff                )
                                     )
        v.                           )
                                     )
METROPOLITAN LIFE INSURANCE          )
COMPANY, and                         )
LUCENT TECHNOLOGIES, INC.,           )
                                     )
            Defendants               )


                        *    *    *

APPEARANCES:
        DONALD P. RUSSO, ESQUIRE
            On behalf of Elizabeth Degroot,
            Attorney in Fact for Roger Degroot

        DANIEL E. WILLE, ESQUIRE,
        CHER WYNKOOP, ESQUIRE and
        MICHAEL D. JONES, ESQUIRE
            On behalf of Defendants,
            Metropolitan Life Insurance Company and
            Lucent Technologies, Inc.

                        *    *    *


<u>MEMORANDUM OPINION</u>

JAMES KNOLL GARDNER,
United States District Judge

    This matter is before the court on Defendants' Motion for

Summary Judgment filed February 10, 2003.  On February 24, 2003

plaintiff filed a Memorandum of Law in Opposition to Defendants'

Motion for Summary Judgment.

1

Oral argument was conducted by the undersigned on February 24, 2003.  Upon conclusion of oral argument the undersigned entered an Order dated February 24, 2003 and filed February 26, 2003.  The Order granted Defendants' Motion for Summary Judgment and dismissed plaintiff's complaint.

Immediately after dictating the Order, the undersigned, in open court, on the record, and in the presence of counsel for the parties, articulated the reasons for our decision, including citations to the record and citations of authority.  We incorporate that analysis here.

On March 20, 2003 plaintiff filed a Notice of Appeal from our February 24, 2003 Order.  Hence this Memorandum Opinion.

This action commenced on March 26, 2002 when the plaintiff[1] filed a Complaint in the Court of Common Pleas of Lehigh County Pennsylvania.  Plaintiff sued the successor corporation to his former employer, Lucent Technologies, Inc. ("Lucent") and the Plan Administrator of Lucent's employee retirement plan, Metropolitan Life Insurance Company ("MetLife").  Plaintiff brought this suit under the federal Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1101-1461 ("ERISA").  In his one-count Complaint, plaintiff alleges that defendants violated

_____

[1] The nominal plaintiff in this case is Elizabeth Degroot. Mrs. Degroot is married to Roger Degroot and represents Mr. Degroot's interests as his attorney-in-fact.  For ease of reference, we will refer to Roger Degroot as the plaintiff throughout this Opinion.

their fiduciary duty to act in good faith and in the best interests of plaintiff as a beneficiary of Lucent's retirement plan.  Specifically, plaintiff contends that defendants violated either their fiduciary duty or statutory duty to inform plaintiff of his option to convert his ERISA plan life insurance policy into a personal policy separate from the group, at his own expense, within 31 days of plaintiff reaching age 65.

On June 4, 2002 MetLife filed a Notice of Removal of this case from the Court of Common Pleas of Lehigh County to the United States District Court for the Eastern District of Pennsylvania.  The Notice of Removal was filed pursuant to 28 U.S.C. §1441 and was based upon the jurisdiction of the District Court under 28 U.S.C. §1331.

<u>Facts</u>

Based upon the pleadings, record papers, depositions, affidavits, and agreements of counsel at oral argument, the following are the pertinent facts.[2]

Plaintiff Roger Degroot is a former employee of AT&T.[3]  Mr.

---

[2]In accordance with the standard for summary judgment discussed below, the facts are enumerated in the light most favorable to plaintiff.

[3]Plaintiff worked for Western Electric.  Western Electric was subsequently bought by AT&T.  When AT&T took over Western Electric it assumed the obligation of Roger Degroot's employee retirement plan.  After Mr. Degroot retired AT&T spun off several subsidiary companies including Lucent Technologies, Inc.  When Lucent Technologies, Inc. parted from AT&T it assumed the responsibility for Mr. Degroot's employee retirement plan.

Degroot was born on July 31, 1934.  Plaintiff reached age 65 on
July 31, 1999, approximately ten years after he retired from
AT&T.

    Plaintiff began working for Western Electric in 1960 at the
Winston-Salem, North Carolina office.  In 1965, plaintiff was
offered, and accepted, a $52,000 group life insurance policy from
Western Electric.  The parties agree that plaintiff elected an
option which permitted him to purchase supplemental group
insurance coverage up to a maximum of four times his base salary
of $52,000.  As a result Mr. Degroot had a total of $260,000 of
life insurance coverage.  He paid the premium for $208,000 of his
coverage, and his company paid the premium on the remaining
$52,000 of coverage.

    At some point afterwards, AT&T purchased Western Electric.
Thereafter, plaintiff came to work for AT&T.  AT&T assumed the
responsibility for plaintiff's group life insurance plan. While
Mr. Degroot was employed by AT&T he was transferred to the
Allentown, Pennsylvania plant.

    In 1970 Mr. Degroot was diagnosed with Parkinson's disease.
Nevertheless, plaintiff continued to work until age 56.  Shortly
after retiring, plaintiff began to receive pension checks.  At
that time the life insurance premiums for the group policy were
being deducted from his pension check.

    After plaintiff retired,  AT&T spun off Lucent.  As part of

4

the separation from AT&T, Lucent assumed the obligation for Mr.
Degroot's employee retirement benefits.  Lucent held plaintiff's
pension and benefits at the time those benefits were terminated
by the company.

It is not disputed that on July 31, 1999 defendant MetLife
terminated Mr. Degroot's insurance because Lucent ceased
deducting and forwarding the premiums from plaintiff's pension
check.  It is also undisputed that plaintiff did not exercise his
right to privately fund the insurance or to convert the insurance
into his own personal policy separate from the group policy, at
his own expense, within 31 days of July 31, 1999.  It is further
undisputed that Mr. Degroot did not attempt to convert the
insurance into his personal policy within 61 days of August 31,
1999.

There is a factual dispute between the parties concerning
whether or not, and when, plaintiff was notified concerning the
provisions in the group insurance policy requiring plaintiff to
elect to convert the policy within 31 days after reaching age 65.
Defendants contend that they mailed summary plan descriptions
(SPD's) to plaintiff on three different occasions.  Defendants
contend that AT&T mailed SPD's in 1987 and 1993 and that Lucent
mailed the third SPD in 1996.  It is not disputed that each SPD

contained information concerning plaintiff's conversion right.[4]

Because of ill health, plaintiff recorded his trial testimony by way of videotape deposition on July 31, 2002. A transcript of plaintiff's trial testimony was attached as Exhibit A to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment filed February 24, 2003.

At his deposition, plaintiff testified that he did not receive a notice of cancellation of benefits (Roger Degroot Deposition Transcript at page 22). Mr. Degroot admitted receiving a copy of the insurance policy a "long time ago" (Degroot at 77). Plaintiff testified that he never received anything from either AT&T or Lucent after he retired (Degroot at 68). He stated it was possible that he received something about his life insurance benefits from AT&T or Lucent after he retired (Degroot at 69). Additionally, plaintiff did receive quarterly

---

[4]The 1993 and 1996 SPD each contain a section entitled "Converting Your Coverage," which states:
> You may be able to convert all or part of you basic life insurance and supplementary life insurance coverage to an individual policy without proof of insurability, if: ... your supplementary life insurance coverage terminates as a result of your obtaining age 65 ... to convert your coverage without proof of insurability, you must request the conversion within 31 days after your life insurance coverage ends ... if you apply to make a conversion, your coverage continues during that time. After 31 days, you cannot make a conversion. If you are interested in converting your coverage, contact Metropolitan Life Insurance Company at 1 800 638.4288. The individual policy will be one customarily issued by Metropolitan Life Insurance Company for conversions.

reports from either AT&T or Lucent (Degroot at 47).  Furthermore, plaintiff acknowledged that he did not keep everything either company sent him (Degroot at 61).

On February 19, 2003, defendants took the trial deposition of Edwin J. Adams.  Mr. Adams was employed by AT&T, but he came to work for Universal Mailing Service (UMS) after Lucent was spun off from AT&T.  Lucent hired UMS to mail materials to retired persons such as the plaintiff who received pension checks from Lucent.

According to Mr. Adams, company records reveal that Mr. Degroot is on the Lucent mailing list, and the SPD's and other materials were mailed to plaintiff.  Mr. Adams concluded that Mr. Degroot would either receive all, or none, of the mailings sent by UMS for Lucent.  Mr. Degroot acknowledged receiving some of the mailings that Adams testified were sent to plaintiff by UMS.

### Summary Judgment Standard

Summary judgment is proper when no genuine issue of material fact is in dispute and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Federal Home Loan Mortgage Corp. v. Scottsdate Insurance Company, 316 F.3d 431, 443 (3d Cir. 2003).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see Federal Home Loan Mortgage Corp., 316 F.3d at 443.  Thus, a "material" fact is one that is necessary to establish an element under the substantive law governing a claim.  An issue of material fact is "genuine" if it is such that it would enable a reasonable jury to return a verdict for the non-moving party.  Anderson, supra.

When considering summary judgment, the court must take the facts in the light most favorable to the non-moving party.  While the non-moving party is not burdened to prove his case as he might at trial, "a party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial."  Anderson, supra. (citing Fed.R.Civ.P. 56(e)).  As a result, plaintiff, as the non-moving party, must set forth such facts that would permit a reasonable jury to conclude that the plaintiff can establish every element of his case.

ERISA Preemption

At different points, plaintiff argues contends that ERISA is both preempted and not preempted.  Plaintiff asserts that 40 P.S. §532.7[5] and ERISA's fiduciary duty standard obligated defendants

_____

[5] Section 532.7, Notice of conversion privileges, provides:

If any individual insured under a group life insurance policy hereafter delivered in this State becomes entitled under the terms of such policy to have an individual policy of life

8

to give prior notice to Mr. Degroot of the termination of his
life insurance at age 65.  Mr. Degroot characterizes 40 P.S.
§532.7 as a Pennsylvania statute which requires insurers to
notify beneficiaries of cancellation of benefits.

Defendants contend that ERISA preempts any state law
provision concerning if and when a plan administrator must inform
a plan beneficiary of cancellation of benefits.  In the
alternative, if state law is not preempted, then defendants argue
that Delaware state law,[6] and not Pennsylvania law, governs the

---

insurance issued without evidence of insurability, subject to
making of application and payment of the first premium within the
period specified in such policy, and if such individual is not
given notice of the existence of such right at least fifteen days
prior to the expiration date of such period, then, in such event
the individual shall have an additional period within which to
exercise such right, but nothing herein contained shall be
construed to continue any insurance beyond the period provided in
such policy.  This additional period shall expire fifteen days
next after the individual is given such notice but in no event
shall such additional period extend beyond sixty days next after
the expiration date of the period provided in such policy.
Written notice presented to the individual or mailed by the
insurer to the last known address of the individual as furnished
by the policyholder shall constitute notice for the purposes of
this section.
40 P.S. §532.7.

[6] Section 3125 of the Delaware statute, Notice as to
coversion right, provides:

If any individual insured under a group life insurance
policy hereafter delivered in this State becomes entitled under
the terms of such policy to have an individual policy of life
insurance issued without evidence of insurability, subject to
making of application and payment of the first premium within the
period specified in such policy, and if such individual is not
given notice of the existence of such right at least 15 days
prior to the expiration date of such period, then in such event
the individual shall have an additional period within which to

notification requirement.[7]

For the following reasons, we conclude that defendants are entitled to summary judgment under both federal and state law.

An ERISA preemption analysis begins with the preemption clause found at 29 U.S.C. § 1144(a).  In relevant part, that clause reads:

> Except as provided in subsection (b) of this section, the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 4(a) [29 USCS § 1003(a)] and not exempt under section 4(b) [29 USCS § 1003(b)].

29 U.S.C. § 1144(a).

Congress recognized, however, that there is a substantial overlap in ERISA and areas of law that have traditionally fallen within states' police powers.  <u>California Division of Labor Standards Enforcement v. Dillingham Construction, N.A., Inc.</u>, 519 U.S. 316, 330, 117 S.Ct. 832, 840, 136 L.Ed.2d 791, 803 (1997).  As a result, 29 U.S.C. 1144(b)(2)(A) contains a "Savings clause"

---

exercise such right, but nothing herein contained shall be construed to continue any insurance beyond the period provided in such policy.  This additional period shall expire 15 days next after the individual is given such notice but in no event shall such additional period extend beyond 60 days next after the expiration date of the period provided in such policy.  Written notice presented to the individual or mailed by the insurer to the last known address of the individual as furnished by the policyholder shall constitute notice for the purposes of this section.
18 Del. C. §3125.

[7] We note that the two statutes are nearly identical in text.

that provides in relevant part: "Except as provided in paragraph (B), nothing in this title shall be construed to exempt or relieve any person from any law of any state which regulates insurance, banking, or securities."  29 U.S.C. 1144(b)(2)(A).

The statute goes on to clarify that self-insured employee benefit plan under ERISA will not be subject to the "Savings Clause."  The statute accomplishes this in § 1144(b)(2)(B), which reads:

> Neither an employee benefit plan described in section 4(a) [29 USCS § 1003(a)], which is not exempt under section 4(b) [29 USCS § 1003(b)](other than a plan established primarily for the purpose of providing death benefits), nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

29 U.S.C. 1144(b)(2)(B).

It is undisputed that the ERISA-covered employee benefit plan provided by Lucent Technologies, Inc. was insured by Metropolitan Life Insurance Company.  Thus, we proceed to the application of the common sense test and the McCarran-Ferguson Act factors, which govern the determination of whether regulations affecting insured employee retirement plans are preempted.

The Supreme Court has "long acknowledged that ERISA's pre-emption provision is 'clearly expansive.'" Dillingham,

519 U.S. 316, 324, 117 S.Ct. 832, 837, 136 L.Ed.2d 791, 799

(1997) (citing New York State Conference of Blue Cross & Blue

Shield Plans v. Travelers Ins. Co.,

514 U.S. 645, 656, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995)).  In

order to effectuate Congress' intent to create broad preemption

(despite what the Supreme Court has called "the unhelpful text"

of the statute), the Supreme Court has created a multi-tiered

preemption analysis.  Travelers, 514 U.S. at 656.

     The first tier of the analysis provides for an examination

of potentially preempted state laws at a nominal level.  This

two-part inquiry provides that "[a] 'law 'relate[s] to' a covered

employee benefit plan for the purposes of §514(a) 'if it [1] has

a connection with or [2] reference to such a plan.'" Dillingham,

519 U.S. at 324 (quoting District of Columbia v. Greater

Washington Bd. Of Trade,

506 U.S. 123, 129, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992)(quoting

Shaw v. Delta Air Lines, Inc.,

463 U.S. 85, 96-97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)).

     The second inquiry is met where a law makes reference to

ERISA, or "immediately and exclusively" act upon ERISA plans, or

"where the existence of ERISA plans is essential to the law's

operation." Dillingham, 519 U.S. at 325.  Where the second

inquiry is satisfied, the analysis stops, and the state law is

preempted.  But where the first inquiry is applicable, additional

12

avenues of inquiry are mandated.  The instant case falls into the first inquiry as neither the Pennsylvania nor the Delaware statute makes reference to ERISA and neither statute requires ERISA to exist for either statute to have effect.

The "connection" test in the first inquiry requires an extensive analysis.  "[T]o determine whether a state law has the forbidden connection, we look both to 'the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive,' [Travelers, 514 U.S. at 656], as well as to the nature of the effect of the state law on ERISA plans, 514 U.S. at 658-659." Dillingham, 519 U.S. at 325.

In this analysis, the court bears in mind that "even state laws that are consistent with ERISA's substantive requirements" are preempted.  Metropolitan Life Insurance Co. v. Massachusetts, 471 U.S 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728, 739 (1985) (citing Shaw, 463 U.S. at 98-99).  Also, "'[even] indirect state action bearing on private pensions may encroach upon the area of exclusive federal concern'" where ERISA alone occupies the field. Metropolitan Life, 471 U.S. at 739 (citing Alessi v. Raybestos-Manhattan, Inc.,
451 U.S. 504, 525, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981)).  Upon consideration of these factors the court is to apply the "common sense" test within the "connection" test.

Neither the "connection" test nor the "common sense" test is

given anymore definition than a reference to the other.  There does not appear to be any elaboration on the factors to be considered in the "common sense" test other than those apparent from its name, but an example of the test is provided by the Seventh Circuit in Plumb v. Fluid Pump Service, Inc., 124 F.3d 849, 860 (7th Cir. 1997).  In that decision the Seventh Circuit ratified the district court's decision "that the [State] law [concerning preexisting condition limitations] was not pre-empted on the 'common-sense view' that a law that 'regulates the terms of certain insurance contracts' qualifies as a law that, in the words of the savings clause, 'regulates insurance.'"  Plumb, 124 F.3d at 860 (citing Metropolitan Life, 471 U.S. at 740).

This example indicates that state laws that regulate the business or terms of insurance rather the application or administration  of a plan will fall within the "Savings clause" and will not be preempted.  The better defined steps in the analysis, however, are the McCarran-Ferguson Act factors that follow the "common sense" test.

The McCarran-Ferguson Act factors provide substantive prongs to analyze the "connection" and "common sense" tests.  The McCarran-Ferguson Act, as interpreted by the Supreme Court in Union Labor Life Insurance Co. v. Pireno, 458 U.S. 119, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982), provides a three-prong test which requires the court to make the following

14

determinations:

> *first*, whether the practice [(the state law)] has the effect
> of transferring or spreading a policyholder's risk; *second*,
> whether the practice is an integral part of the policy
> relationship between the insurer and the insured; and *third*,
> whether the practice is limited to entities within the
> insurance industry.

Pireno, 458 U.S. 119, 129.

"None of these criteria is necessarily determinative in itself."

Id. In enacting the McCarran-Ferguson factors, "Congress was

concerned with the type of state regulation that centers around

the contract of insurance ... The relationship between the

insurer and the insured, *the type of policy which could be*

*issued*, its reliability, its interpretations, and enforcement –

these were the core of the 'business of insurance.'" Metropolitan

Life, 471 U.S. at 743-744 (quoting SEC v. National Securities,

Inc., 393 U.S. 453, 460, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969)).

Thus, in applying the factors the court should determine whether

the state law regulates insurance or an ERISA covered employee

benefit plan.  Those laws applicable to "the business of

insurance" are not preempted whereas the latter are preempted.

The contours of the three McCarran-Ferguson factors are not

well-defined, but some guidance can be gleaned from the case law.

The first factor has received the least treatment, but several

cases address the factor by examining the allocation of risk

between the parties as determined at the time of contract and

15

determining whether the state law at issue altered the then existing allocation of risk.  See e.g. Unum Life Insurance Company of America v. Ward,

526 U.S. 358, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999); Pireno, 458 U.S. 119.  This treatment suggests that state laws must not be permitted to interfere with the pre-existing allocation of risk found in ERISA governed employee benefit plans.  The extent to which a law predating the ERISA plan transfers or spreads risk has not been explicitly addressed.

The court finds that neither statute alters the allocation of risk between the parties was determined at the time of contract.  The court further finds that both state statutes insert only an administrative term into the insurance contracts they govern and do not affect the substantive nature of the contract.  The state statutes impose a limited administrative burden upon the plan administrator.  The plain meaning of each statute is to provide a maximum of 60 additional days after termination of benefits for a beneficiary to comply with the terms of the insurance policy if that beneficiary was not given notice of the termination.  Since neither statute affects a substantive term of the insurance policy or the allocation of risk among the parties neither statute need be preempted by ERISA.

The second factor requires that the state law provide "an

16

integral part of the policy relationship between the insurer and the insured" to trigger further analysis.  Metropolitan Life, 471 U.S. at 743.  To the extent that the state law "'effectively creates a mandatory contract term'" the state law engages this factor.  Ward, 526 U.S. at 374 (internal citation omitted).  The state law must regulate the "business of insurance," however.  Ward, supra.  The state law must alter the terms of an insurance contract, even if only to add an additional administrative burden for the insurance company.  For example, the Supreme Court in Ward, supra. found that a California notice-prejudice rule regulated the "business of insurance" because it required the insurance company to prove prejudice before it could enforce a timeliness-of-claim exclusion provision of the insurance contract.  Ward, supra.  This term was not preempted.

The notice provision inserted by either statute at issue herein does "regulate the business of insurance" by inserting an administrative term into the insurance contract.  Returning to the text of the statutes, the plain meaning of each statute is to provide a maximum of 60 additional days after termination of benefits for a beneficiary to comply with the terms of the insurance policy if that beneficiary was not given notice of the termination.  The state statutes write in a term of the contract that binds the parties.  Thus, the second factor is met and it weighs against preemption.

17

The third factor requires that the state law to be
exclusively limited to the insurance industry.  To satisfy this
requirement, the state Law "'[must] not merely have an impact on
the insurance industry; it [must be] aimed at it."  Metropolitan
Life,  471 U.S. at 743.  If the state law deviates from its
focus on the insurance industry, then it may stray into the broad
field occupied by ERISA employee benefit plans.  Since the field
on which an ERISA employee benefit plan rests is dominated by
federal law, should a state law stray from a pure focus on the
insurance industry it will likely be preempted by ERISA.

The court does find that both statutes have a broader
application than insurance companies since each statute could
require action by any fiduciary of a plan's beneficiaries.  The
notice provisions of either statute could be provided by either
an insurance company or any other plan fiduciary.  In the instant
case, either Metropolitan Life or Lucent could have provided the
notice that plaintiff seeks.

Indeed, plaintiff argues that the cost to defendants to
provide the notice as opposed to the costs incurred by those in
plaintiff's circumstances bearing the risk of termination
mandates that fiduciaries should bear the burden of providing
notice.  Plaintiff adduces no evidence to support this contention
and the court finds little merit to this bare allegation.  There
is no evidence to support the conclusion that defendants are in

18

any better or worse position to provide notice to those in Mr. Degroot's circumstance than Mr. Degroot himself was in to stay on top of his own financial affairs.

On account of the Supreme Court's determination that the McCarran-Ferguson factors are "relevant" rather than "required" it is not necessary for each factor to be satisfied in order for a law to survive the preemption analysis. Metropolitan Life, 471 U.S. at 743. To effectuate Congress' intent that the extent of ERISA preemption be broad, however, the court must evaluate the nature and extent of any state regulation that might interfere with ERISA. To the extent that any such state law directly or indirectly interferes with an ERISA covered employee benefit plan the state law should be preempted.

Before deciding which state law is appropriate, the court finds that neither the Pennsylvania nor the Delaware notice statute is preempted by ERISA. In applying the McCarran-Ferguson factors to the instant case, the court finds that two factors of that analysis weigh in favor of permitting the state statutes to remain unmolested. The court notes that all the McCarran-Ferguson factors need not be met for the court to reach this conclusion. The court further notes that the McCarran-Ferguson test is not a quantitative analysis, but rather a qualitative one. In weighing the three factors, the court finds that neither state statute interferes with the statutory regime that Congress

establish by ERISA.  Neither statute transverses the area of permissible state power to the field of law that Congress has cleared for ERISA.  As a result, we find that neither state statute is preempted by ERISA.

<u>Choice of State Law</u>

The court applies an interest analysis to determine which state's law is to be applied in the instant case.  In so doing, the court balances the interests that Delaware and Pennsylvania each have in the application of its law to the facts and circumstances at issue in this case.  There are factors that favor the application of each state's law.

There are many factual reasons to choose Delaware law.  Lucent is a Delaware corporation.  Lucent contracted to have Metropolitan Life administer the ERISA plan.  Metropolitan Life provided its services to Lucent in Delaware.  Furthermore, Lucent delivered the plan to its beneficiaries in Delaware.

There is also a strong policy reason for applying Delaware law.  In applying Delaware law the application of the notice provision will be uniform for all the individuals in the Lucent provided ERISA plan.  This uniformity reduces uncertainty and eliminates the administrative cost of applying the notice statutes of multiple states.

There are factors that weigh in favor of applying the Pennsylvania statute.  Mr. Degroot is a Pennsylvania citizen.

Plaintiff realized the benefits of the ERISA plan in
Pennsylvania.  The defendants do business in Pennsylvania and are
sophisticated business entities.

Nevertheless, the court finds that the balance of factors
mandates the application of Delaware law.  To the extent that the
statutes are virtually identical, the application of either
state's law may be a difference without a distinction.

Application of Delaware Law

It is undisputed that plaintiff failed to comply with 18
Del. C. §3125.  The Delaware notice statute provides that in the
event that no termination notice is sent to a beneficiary then
that beneficiary will have not more than 60 days additional time
in which to exercise his rights under the policy.  The defendants
failed to give notice immediately prior to the termination of
plaintiff's benefits.  Furthermore, no notice was provided within
91 days after plaintiff's benefits were terminated.  It is
further undisputed that Mr. Degroot did not attempt to exercise
his right to convert within the period of time provided by 18
Del. C. §3125.

Under Delaware law, the notice statute does not create any
duty on the part of the defendants to give Mr. Degroot notice of
termination of benefits immediately prior to the termination or
thereafter.  Our reading of the Delaware statute is supported by
Murray v. Metropolitan Insurance Co., 1981 Del.Super. LEXIS 821,

Civil Action No. 79C-OC-36 (Superior Court of Delaware, New
Castle July 31, 1981).  In that case, the Delaware Superior Court
interpreted the Delaware statute as neither expressly nor by
implication imposing a duty upon an employer or an insurer to
give an employee a later notification of a conversion privilege
upon expiration of the group coverage, but goes on to say "no
event, not even the complete failure to provide notice extends
the conversion period for more than 60 days after the expiration
of the conversion period provided in the policy." Murray,
1981 Del.Super. LEXIS 821, at 5.  Thus, even if defendants failed
to give notice, never sent an SPD or any other notice, plaintiff
is entitled to relief only if he applied for his conversion
rights within 91 days of his 65th birthday.

Fiduciary Duty under ERISA

Even if the Pennsylvania and Delaware state laws are
preempted by ERISA, then defendants are still entitled to summary
judgment.  Plaintiff relies on ERISA's imposition of a fiduciary
duty upon the plan and the plan administrator to provide notice
of cancellation of benefits.  The court finds, however, that Mr.
Degroot had notice of his right to convert the group insurance
benefit plan to an individual plan upon his 65 birthday or 31
days thereafter.

We conclude that the law neither requires that such notice
be given at all, but even if it does, does not require the notice

22

to be given at any particular time.  ERISA requires only that
plan fiduciaries act prudently in the interests of the plan
beneficiaries.  29 U.S.C. § 1104.  Plaintiff admits that he was
given a copy of the insurance policy a "long time ago" (Degroot
at 77).  Defendants further allege that plaintiff was
subsequently notified of his conversion right several times, the
last of which was some three years prior to Mr. Degroot's 65th
birthday.  Whatever legal requirement there might be to give
notice of the cancellation was satisfied by the mailing of the
SPD's.

Defendants established that they, through UMS, regularly
mailed information to Mr. Degroot, including information
concerning Mr. Degroot's conversion rights.

> Under the 'mailbox rule,' when a letter has been written and
> signed in the usual course of business and placed in the
> regular place of mailing, evidence of the custom of the
> establishment as to the mailing of such letters is
> receivable as evidence that it was duly mailed.  See Sheehan
> v. Workmen's Compensation Appeal Board, 143 Pa. Commw. 624,
> 630, 600 A.2d 633, 636 (1991); Department of Transportation
> v. Brayman Construction Corp., 99 Pa. Commw. 373, 513 A.2d
> 562 (1986).  A mere denial that the item was received is not
> sufficient to overcome the presumption that the item was
> received.  Donegal Mutual Insurance Co. v. Pennsylvania
> Department of Insurance, 694 A.2d 391, 394 (Pa. Commw.
> 1997).
> Kelly v. Allstate Insurance Co., 138 F. Supp.2d 657, 662
> (E.D. Pa. 2001).

Via Adam's testimony, defendants established a regular business
practice of mailing retiree's information concerning their
benefits and other company information.  From Adam's testimony it

is clear that either all of the mailings or none of the mailings sent by UMS would reach plaintiff.   Adam's testimony was bolstered by plaintiff admitting that he received some of the mailings.   As a matter of law, plaintiff's mere denial that he did not receive the mailings concerning his conversion rights will not overcome the presumption that he did receive those items.

Thus, even under an ERISA analysis, the defendants have behaved prudently and satisfied all that the law required of them.

<u>Conclusion</u>

For all the foregoing reasons and those articulated on the record on February 24, 2003, we grant Defendants' Motion for Summary Judgment and dismiss plaintiff's complaint with prejudice.


BY THE COURT:


_____
James Knoll Gardner
United States District Judge


Date:  April 7, 2003